# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARETTA C. WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-405-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sharetta C. Walker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 18, 1965, and was forty-three years old at the time of the administrative hearing (Tr. 25). She graduated high school, obtained a medical assistant certificate (Tr. 25, 119), and has worked as an assistant manager, sewing machine operator, medical records clerk, and admit clerk (Tr. 46). The claimant alleges that she has been unable to work since February 11, 2004 due to bipolar disorder, obesity, and arthritis (Tr. 115).

## Procedural History

On April 8, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 73-75). Her application was denied. ALJ C. Wayne Falkenstein conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 18, 2009 (Tr. 13-22). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) perform a limited range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, the claimant could lift 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit for six hours in an eight-hour workday, but was limited to performing only some complex tasks and interacting with the

general public on a superficial basis only (Tr. 16). The ALJ concluded that the claimant could return to her past relevant work as a sewing machine operator (Tr. 21).

**Review**

The claimant contends that the ALJ erred: (i) by finding her not credible for failing to seek psychiatric treatment; (ii) by finding her not credible for failing to quit smoking; (iii) by finding that her obesity demonstrated a failure to follow prescribed treatment; (iv) by referring to her daily activities to find her not credible; and, (v) by failing to discuss two Third Party Function Reports. The Court finds that the ALJ did not properly assess the claimant's credibility, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings.

The claimant's mother and sister each submitted a Third Party Function Report as to the claimant. The claimant's sister stated that they see each other a couple of hours a week, that the claimant used to go places and "fix herself up," but that she now stays in her pajamas all day long and will not leave the house unless she has to. Additionally, the claimant's sister stated that the claimant can be "very hateful" and does not seem to like anyone, does not get along with authority figures, and believes people are picking on her. The sister described the claimant as dependent on her parents to take care of her, and that she only spends a short time at family gatherings. (Tr. 85-93). The claimant's mother made a similar report, stating that the claimant only has one friend, is suspicious of most people (even family), and is very sensitive about her weight. The mother also stated that the claimant has a very short attention span and problems with authority. (Tr. 105-113).

At the administrative hearing, the claimant testified that she struggles to retain information, that she has a problem with authority figures which cost her her most recent job, that she usually does not leave her house or change out of her pajamas, that she spends almost her entire day watching television, and that she socializes four times a month at most (Tr. 26, 31, 39). Additionally, she testified that she sees her mother almost every day, and that her mother is the only person who can help to calm her down when she flies into a rage. She also stated that she is depressed 95 percent of the time, and worries about the deaths of her parents and her future (Tr. 31-32). She stated that, a month before the hearing, she became upset, wrote a suicide note, and put a gun to her head, then put it in a purse and walked out on her porch, and instead picked up one of her cats and threw it across the porch (Tr. 37). As to her physical complaints, she stated that she has been overweight all her life and she has a lot of pain in her hips, back, and ankles, and she believes that it is due to her obesity; that she could walk an eighth of a mile, or a quarter of a mile if she was "pushing it really hard"; and that she does not believe she can work because either her back would hurt too much while she sat or her extremities would swell too much if she stood (Tr. 38-40). Further, she stated that she avoids crowds and does not like to be around a lot of people, because she is sensitive about her weight (Tr. 38-39). She also stated that she would like to see a psychiatrist, but that she did not believe her insurance covered it and she could not afford it on her own (Tr. 42). At the hearing, the ALJ called a Dr. Brady, who testified that the claimant's mental health impairments should improve with treatment, but admitted to the claimant's attorney that they likely would not improve if she did not receive treatment (Tr. 29-30).

In his written decision, the ALJ described the claimant's testimony, as well as the opinions of the consultative examiners and her treating physicians, but did not discuss the Third Party Function Reports. The ALJ noted the opinion from the administrative hearing that the claimant's mental impairments were likely to improve with treatment. The ALJ then found that the claimant's complaints were not entirely credible because she had not sought any mental health treatment or had any mental health hospitalizations, that she receives antidepressant medication from her treating physician, and that her condition was expected to improve within twelve months of treatment. As a result, he stated that she was noncompliant with treatment because she continues to smoke, has not attempted to lose weight, has had minimal health care, and has not sought mental health counseling. Last, he stated that her daily activities were not exclusive of all substantial gainful activity. (Tr. 17-21).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *See Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the

regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ entirely failed to account for the two Third Party Function Reports the claimant submitted. Social Security Ruling 06-3p (SSR 06-3p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-3p, 2006 WL 2329939. SSR 06-3p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ made no mention of the Third Party Function Reports at all, and his written decision is therefore not clear that he considered this evidence in making his decision. "[T]he ALJ is not required to make specific written findings of credibility *only if* 'the written decision reflects that the ALJ considered the testimony,'" *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) [citation omitted] [emphasis added], and his failure to do so here is reversible error. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10ht Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence."); *see also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the

record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.").

As a second example, the ALJ erred in citing the claimant's smoking habit and continued obesity to find her not credible. Although failure to follow prescribed treatment *is* an appropriate credibility factor, here the ALJ failed to state which prescribed treatment the claimant failed to follow. In any case, the ALJ was required to analyze this factor in accordance with *Frey v. Bowen*, 816, F.2d 508, 517 (10th Cir. 1987),[2] which he did not do. Nor did the ALJ explain how the claimant's failure to quit smoking against medical advice or lose weight decreased her credibility.

Because a credibility assessment requires consideration of all the factors 'in combination,' *Huston*, 838 F.2d at 1132 n.7, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.") [unpublished opinion]. Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's credibility. On remand, the ALJ should (i) properly evaluate the third party witness statements in accordance with the factors set out in SSR 06-3p and *Blea*, and then re-assess claimant's credibility; and (ii) analyze whether the claimant followed prescribed treatment, as required under *Frey*. If the ALJ's subsequent

---

[2] In analyzing claimant's failure to follow prescribed treatment, "we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) [citations omitted].

credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma